IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLOTTE BEAUMONT, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 C 1023 |
| | ) | |
| v. | ) | Magistrate Judge Cole |
| | ) | |
| J.P. MORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Charlotte Beaumont fell as she entered the Chase Bank branch in Plainfield, Illinois, on January 29, 2008. She sued the Bank, alleging that it was negligent in failing to provide a safe means of ingress to the Bank, and/or "designed, created, constructed, allowed or permitted a dangerous [condition] to exist in the main entrance by failing to remove water on the surface of the entrance way." (*Defendant's Local Rule 56.1 Filing*, ¶4). The Bank has moved for summary judgment on the theory that the evidence shows that the cause of Ms. Beaumont's fall was moisture tracked in by the Bank's customers (and Ms. Beaumont), which, under Illinois law, constitutes a "natural accumulation" of water and cannot be the basis for liability. Ms. Beaumont contends that the Bank's "assumption that [the cause of her fall] is tracked in water is speculation unfounded in fact." (*Response to Motion for Summary Judgment* at 1)("*Response*"). She offers three "possibilities" to explain the cause of her fall. Jurisdiction is based on diversity of citizenship, and Illinois

1

substantive law therefore controls. *Protective Life Insurance. Co. v. Hansen,* 632 F.3d 388, 392 (7th Cir. 2011); *Fednav Intern. Ltd. v. Continental Insurance. Co.,* 624 F.3d 834, 838 (7th Cir. 2010). The parties have consented to proceed before a magistrate judge pursuant to 28 U.S.C. §636 (c)(1).

# I.
# BACKGROUND

## A.
## Summary Judgment Procedures Under Local Rule 56.1

As always, the facts underlying this summary judgment proceeding are drawn from the parties' Local Rule 56.1 submissions. Local Rule 56.1 requires a party seeking summary judgment to include with its motion "a statement of material facts as to which the ... party contends there is no genuine issue and that entitle the ... party to a judgment as a matter of law." Local Rule 56.1(a)(3); *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008). Each paragraph must refer to the "affidavits, parts of the record, and other supporting materials" that substantiate the asserted facts. Local Rule 56.1(a)(3); *F.T.C. v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). The party opposing summary judgment must then respond to the movant's statement of proposed material facts; that response must contain both "a response to each numbered paragraph in the moving party's statement," Local Rule 56.1(b)(3)(B), and a separate statement "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment." Local Rule 56.1(b)(3)(C); *Ciomber*, 527 F.3d at 643. Again, each response, and each asserted fact, must be supported with a reference to the record. Local Rule 56.1(b)(3)(B); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Bay Area Business Council, Inc.*, 423 F.3d at 633.

If the moving party fails to comply with the rule, the motion can be denied without further consideration. Local Rule 56.1(a)(3); *Smith v. Lamz*, 321 F.3d 680, 682 n.1 (7th Cir. 2003). If the responding parting fails to comply, its additional facts may be ignored, and the properly supported facts asserted in the moving party's submission are deemed admitted. Local Rule 56.1(b)(3)(C); *Montano v. City of Chicago*, 535 F.3d 558, 569 (7th Cir. 2008); *Cracco*, 559 F.3d at 632; *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006). District courts are "'entitled to expect strict compliance'" with Rule 56.1 and do not abuse their discretion when they opt to disregard facts presented in a manner that does follow the rule's instructions. *Cracco*, 559 F.3d at 632; *Ciomber*, 527 F.3d at 643; *Ammons v. Aramark Unif. Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004). The court is not required to hunt for evidence in the record that supports a party's case if a party fails to point it out; that is the job of counsel. *See Bay Area Business Council*, 423 F.3d at 633 (court properly disregarded affidavits not referenced in the Rule 56.1 submission).

**B.**
**Facts**

At her deposition, Ms. Beaumont testified that on the day of her fall, which occurred within 25 minutes of the Bank's 9:00 a.m. opening, the sidewalk outside the entrance of the Bank was wet, but there were no puddles or accumulations of water. ( *Plaintiff's Response to Defendant's Local Rule 56.1 Filing* ("*Pl.Rsp*") at 9; *Plaintiff's Rule 56.1 Statement* ("*Pl.St.*"), ¶9). Ms. Beaumont "saw the sidewalk was wet...." (*Pl.St.,* ¶6; *Response* at 6). She does not know of any other source of water or moisture that could have made the tile floor where she fell slippery except the wet sidewalk leading to the Bank. *(Defendant's Local Rule 56.1 Statement* ("*Def.St.*"), ¶¶ 9, 22, 23; *Pl.Rsp*, ¶¶ 9, 22, 23). "Other people entering the...Bank would have walked on the same wet sidewalk." (*Def.St.,*

3

¶10; *Pl.Rsp.*, ¶10). She estimated that she saw six to ten people already inside the Bank. (*Def.St.* ¶ 18; *Pl.Rsp.*, ¶ 18). She did not see any water on the floor of the entryway as she went in; nor was there any debris. (*Def.St.* ¶ 12; *Pl.Rsp.*, ¶ 12). Inside the entryway, there was a mat, but it did not go all the way to the door that led from the outside of the Bank into the vestibule leading to the interior door; there was a space of about three feet of bare tile between the mat and the doorway. (*Def.St.* ¶ 13; *Pl.Rsp.*, ¶ 13). Ms. Beaumont never looked down at that area of bare floor or down at her feet as she entered the Bank. *(Pl. Rsp.* ¶¶ 13-14).

Plaintiff opened the door, took two steps inside and then fell on the portion of the floor that was not covered by the mat. (*Def.St.* ¶ 15-16; *Pl.Rsp.*, ¶ 15-16). As she lost her footing, her body pivoted and she landed on her left elbow and shoulder. (*Plaintiff's Dep.*, at 43-44). When asked what caused her fall, she said she "believe[d] that if the mat had been down [all the way to the door] [she] would not have fallen." (*Plaintiff's Dep.*, at 47). The tile in front of the mat was wet, but there were no puddles. (*Plaintiff's Dep.*, at 47-49). Her coat got damp – "a little bit moist" – from her fall. (*Plaintiff's Dep.*, at 48).

Branch manager, Alexis Espino, "remembers the weather being somewhat clear" the morning of the accident. (*Pl.St.*, ¶1); (*Response* at 2). Phillip Boch recalled that there was no snow or ice present on the day of the incident, and that there was no extreme weather. He did not recall whether it was raining that morning, but was certain there was no water on the floor when he inspected it after Ms. Beaumont's fall. (*Pl.St.*, ¶ 2).[1]

---

[1] Phillip Boch is most likely *not* a Bank employee, as it appears from the transcripts that it was he who conducted the interviews with the Bank employees. He is never identified in plaintiff's submissions. The statements referred to in paragraph 2 of plaintiff's Rule 56.1 statement are probably those of Dorothy
(continued...)

Personal banker, Larry Summers, testified that it was a pretty clear and cool day and he did not see any water, snow or ice on the vestibule floor after the plaintiff's fall. (*Pl.St.*, ¶ 3). None of the Bank employees said anything about the sidewalk. That is, they neither confirmed nor refuted Ms. Beaumont's statements regarding the sidewalk having been wet and that the only source of moisture of which she was aware would have come from the wet sidewalk. (*Def.St.*, ¶¶22-23; *Pl.Rsp.* ¶¶22-23; *Response* at 6-7). The Bank's customers who were already in the Bank had also walked on the wet sidewalk. (*Pl.Rsp.*, ¶10).[2]

## II.
## ANALYSIS

### A.

At the summary judgment stage, the facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Pro. 56(c); *Scott v. Harris*, 550 U.S. 372, 380 (2007). Once the moving party has made a properly supported

---

[1](...continued)
Hall, a personal banker at the Chase Bank branch where plaintiff fell. (*Pl.St.*, ¶ 2). The statements do not say anything about the sidewalk not being wet. They merely say that there was no snow or ice. And the fact that the entryway floor wasn't wet when it was inspected is consistent with either Ms. Beaumont's shoes having been wet from the sidewalk, which she acknowledges was wet (*Response* at 6-7), or from the wetness having been transferred to her coat, which she said was moist after the fall. Finally, there is no indication of when the "inspection" occurred.

[2] In light of these undisputed facts, Ms. Beaumont cannot convincingly contend that there is no evidence of water or moisture having been tracked in by Ms. Beaumont or those other customers who were already in the Bank when she arrived. In any event, the Response inconsistently says that the Bank employees "themselves may have tracked in" water or moisture from the wet sidewalk. (*Response* at 1). Beyond this statement the point is not developed. The record is silent as to when the Bank's employees entered the Bank – it would presumably have been some time before the 9:00 a.m. opening – or whether they entered through the same door as the customers or through a separate door for employees. Thus, the plaintiff has adduced no evidence that the employees brought moisture into the vestibule or if they did that it was still on the floor at the time of the accident, which the Bank's report placed at 9:25 a.m. Ms. Beaumont placed the fall a few minutes before 9:25 and closer to 9:15. Ms. Beaumont conceded not knowing how long before her accident the tile floor was wet or slippery. (*Pl.Rsp.*, ¶21).

5

motion for summary judgment, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986)(footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986)(Emphasis supplied).

The Bank argues that the "natural accumulation" rule applies in this case. Under this hoary principle of Illinois common law, a landowner or possessor of real property has no duty to remove natural accumulations of ice, snow, or water from its property. *Krywin v. Chicago Transit Authority*, 238 Ill.2d 215, –, – N.E.2d –, –, 2010 WL 2780319, *6 (2010); *Reed v. Galaxy Holdings, Inc*., 394 Ill.App.3d 39, 43, 914 N.E.2d 632, 637-38 (1st Dist. 2009). This includes "tracks or residue left by customers who have walked through natural accumulations of water, slush, or snow." *Pytlewski v. United States,* 991 F.Supp. 1043, 1047 (N.D.Ill.1998)(collecting cases); *Reed*, *supra*. The doctrine is so deeply ingrained in Illinois common law that it applies even to common carriers, which owe their passengers the highest duty of care, including the duty to furnish them an opportunity to safely alight from the conveyance and reach a place of safety. *Krywin*, 2010 WL 2780319, 12.

The threshold question is whether *Ms. Beaumont* must prove that there was an *unnatural* accumulation of water or moisture that the Bank created that caused her to slip and fall, or whether the *Bank* must prove that there was a *natural* accumulation of water. The answer is beyond debate: The cases require that Ms. Beaumont prove that there was an *unnatural* accumulation of water that the Bank created that caused her to slip and fall. *See Ciciora v. CCAA, Inc*., 581 F.3d 480, 483 (7th

Cir. 2009); *Flight v. American Community Management, Inc.*, 384 Ill.App.3d 540, 544, 893 N.E.2d 285, 288 (1st Dist. 2008); *Eichler v. Plitt Theatres, Inc.,* 167 Ill.App.3d 685, 692, 521 N.E.2d 1196, 1201 (2nd Dist.1988). Where, as here, the nonmoving party will bear the burden of proof at trial on a dispositive issue, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The plaintiff's attempt to invert that burden – "Just as proof of negligence in the air will not do, neither will proof of unnatural accumulation in the abstract. The defendant must have proof for it to prevail in its motion." (*Response* at 11) – is impermissible and distorts proper analysis.

**B.**

The evidence relied on by the plaintiff to show a genuine issue of material fact consists of her own testimony and that of several of the Bank's employees. In her Response to the Motion for Summary Judgment, Ms. Beaumont claims that the Bank employees "recall no water, snow, or ice being present." (*Response*, at 11). None of those employees saw the accident or could say what caused it; they came on the scene after Ms. Beaumont's fall.. They said nothing about the condition of the sidewalk leading to the Bank's entrance. Ms. Beaumont did. She testified that the weather on the day of the accident was cloudy and cold, but it had not rained or snowed that morning or for some days before, although she also insisted the sidewalk was wet. (*See supra* at 3; *Response* at 6-7). She was wearing gym shoes at the time she fell in the area between the inner and outer doors of the Bank – an area which she claimed was slippery. (*Plaintiff's Dep.*, at 47-48).

In sum, the testimony of the Bank's employees and that of Ms. Beaumont is that no one saw water on the entryway floor, that the sidewalk outside the Bank was wet, and that Ms. Beaumont

walked on that sidewalk before she entered the Bank, as did the several customers who were already in the Bank. But, as discussed below, this testimony does not begin to support an argument that there was an *unnatural* accumulation of water or moisture in the entryway to the Bank or that there exists a genuine issue of material fact on that issue. Quite the opposite. Some moisture would have been tracked in on the shoes of Ms. Beaumont and the Bank's other customers. Under all the cases, *see supra* at 5, *natural* accumulations include "tracks or residue left by customers who have walked through natural accumulations of water, slush, or snow." *Pytlewski,* 991 F.Supp. at 1047. *See also infra* at 11 *et. seq.*[3]

But let us assume that Ms. Beaumont is correct in her assertion that the Bank's theory that the fall was caused by tracked-in water "is speculation unfounded in fact." The outcome of the case is unaffected. Ms. Beaumont still has the burden of producing evidence that will support a viable theory of liability. If she cannot, the accident remains unexplained and cannot be linked to any action by the Bank. The plaintiff says there are three "possibilit[ies]" that explain her fall. (*Response* at 12). As we shall see in a moment, all are unsupported by any evidence and all are speculative in the extreme.

## C.

The first "possibility" hypothesized by Ms. Beaumont is that "the moisture which Plaintiff slipped upon was condensation which formed on slippery tile." But she has offered no proof to support the theory, and, given the precise details of the conjecture offered in Ms. Beaumont's

---

[3] While there was a mat outside the outer door of the vestibule, it was placed horizontally in front of the door, leaving an exposed area of the sidewalk on which customers had to step before opening the door to the vestibule. *See* (*Stipulation of Facts*, Group Ex. E [Dkt. 28]).

8

Response, testimony by a witness qualified to give testimony under Rule 702, Federal Rules of Evidence, would clearly be needed. The Response argues:

> there was a single thermostat for the facility, and it was located inside of the banking facility, not the vestibule. One can see from the photographs that the vestibule would necessarily be colder and more humid then the banking center if the heat went on and off at the same time in the vestibule as it did in the bank. The photos show the bank does not have much in the way of windows. See Stipulation at Exhibit E. The vestibule is largely windows and doors which would allow cold moist air from the outside into the vestibule. (The moist air assumes the accuracy of Plaintiff's testimony that there was moisture on the ground.) It is *likely* that that same moist, humid air, perhaps from melting snow and evaporating rain was present in the vestibule.[4] Given the known conditions in the vestibule (obviously there are many unknown factors such as precise humidity, exact temperature, circulation flow, etc.) condensation would form on ceramic tile. Assuming it was condensation which Plaintiff slipped upon, it cannot be considered a "natural accumulation of ice/snow/water."

(*Response*, at 12)(Emphasis supplied)(Parenthesis in original).

This hypothesis is based entirely on the testimony of Richard Loos, the facility manager, who testified as to the location of the thermostat and the layout of the entryway. Mr. Loos testified at his deposition that he did not know how the air flowed into the vestibule. The Response contends that he later "seemed to testify" that the return air flow to the HVAC system from the vestibule was in the ceiling and that hot hair came into the vestibule from a vent. (*Pl.St.*, ¶18). Assuming that Mr. Loos in fact testified this way and that he was competent to do so, *see* Rule 602, Federal Rules of Evidence, he was not shown to be competent about matters of condensation, and he was never asked to render an opinion that might have lent support to the plaintiff's theory, and he did not do so.

There is no testimony from anyone that condensation had previously formed on the floor under similar conditions or that it could have formed under the circumstances presented by this case.

---

[4] Of course, this "theory" is contradicted the statements plaintiff put into evidence that there wasn't any snow or rain to melt or evaporate.

9

There is no evidence that it was a humid day. In fact, the undisputed testimony is that it was a clear, cool day. Plaintiff essentially concedes that she has no idea whether it was humid or even if condensation could have formed. (*Response* at 14). Moreover, whether condensation could have formed under the circumstances presented by the record, is not a question that can be answered, as the Response attempts to do, without expert testimony. In some contexts, no expert is needed so long as a lay-person can understand an injury or condition, as when an individual suffers from a basic and obvious injury when hit by a vehicle, no expert is needed to show that the collision was the cause of the injury. *E.E.O.C. v. AutoZone, Inc.,* 630 F.3d 635, 644 (7th Cir. 2010). That is obviously not the situation here. The need for expert testimony is further highlighted by the Response's concession that "there are many unknown factors such as precise humidity, exact temperature, circulation flow, etc...." (*Response* at 12).

In sum, Ms. Beaumont has failed to show that there is a genuine issue of material fact as to whether condensation even could have been a source of moisture on the tile floor, let alone that it was. The condensation theory is no better than a hopeful hypothesis, and "hypothesis is not proof . . . ." *Lauth v. McCollum,* 424 F.3d 631, 634 (7th Cir. 2005). The Seventh Circuit "has long 'reject[ed] the idea that speculation can be employed as a substitute for proof'" in any context, *United States v. Landry,* 257 F.2d 425, 431 (7th Cir. 1958), *In re Cohen*, 507 F.3d 610, 614 (7th Cir. 2007), and time and again has emphasized that when responding to a summary judgment motion it is not sufficient to advance a "hunch." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Summary judgment is "put up or shut up" time. *Goodman v. National Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). It "is not a dress rehearsal or practice run; . . . a party must show what

evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 859 (7th Cir. 2005) (internal citations omitted).

In the specific context of cases involving the natural accumulation rule, courts have consistently held that "merely inviting speculation as to the cause of the [water/ moisture [is] insufficient to survive summary judgment." *Ciciora v. CCAA, Inc.*, 581 F.3d 480, 483 (7th Cir. 2009). *Accord Judge-Zeit v. General Parking Corp.*, 376 Ill.App.3d 573, 584, 875 N.E.2d 1209, 1219 (1st Dist. 2007)("Mere speculation [that defendant was responsible for an unnatural accumulation] is not enough to create a genuine issue of material fact sufficient to survive a motion for summary judgment.").

The second "possibility" hypothesized by the Response is that someone spilled a drink on the tile of the entryway. (*Response* at 13). But the Response offers no testimony from any of the Bank's employees or from the plaintiff, herself, to support this theory. In fact, she never looked down at the floor as she entered the Bank. *See supra* at 4. That she slipped on a spill from a drink is simply tendentious speculation on her part, and that is insufficient to withstand summary judgment. *Ciciora*, 581 F.3d at 483; *Judge-Zeit*, 376 Ill.App.3d at 584, 875 N.E.2d at 1219.[5]

---

[5] Even if plaintiff had submitted evidence that she slipped on a spilled drink, her Response would still fall short. If an individual is injured by slipping on a foreign substance placed or left on the premises by the proprietor or its agent – such as a spilled drink – the defendant business can be liable whether it knows of the dangerous condition or not. *Lane v. Hardee's Food Systems, Inc.*, 184 F.3d 705, 707 (7th Cir. 1999). "If the offending substance was on the premises through acts of a third person, or if there is no showing of how it got there, the business will normally only be liable if it had actual or constructive knowledge of its presence or if 'the substance was there a sufficient length of time so that in the exercise of ordinary care its presence should have been discovered.'" *Id.* Here, the plaintiff has not so much as hinted as to the source of the phantom drink or that the supposed spill was there for a sufficient length of time to charge the Bank with notice. Remember, the accident occurred soon after the Bank opened.

Plaintiff's third "possibility" – and the one she seems to especially favor – is that her fall was caused by the placement of the mat three feet away from the entrance to the Bank rather than adjacent to it. (*Response*, at 2, 7,13). As the Response puts it, the bank's "decision to center a utilitarian mat in its vestibule, as if it were a decorative area rug, rather than properly place it adjacent to the door where it would have served its intended purpose, is most definitely a proximate cause of this accident." (*Response*, at 13). But why that should be so is never quite explained.

Ms. Beaumont did not say she slipped or tripped on the mat or that the mat was in a state of disrepair. Rather, she claims that she slipped on water or moisture – or perhaps some unknown liquid – on the floor in front of the mat. But there was no proof of any *unnatural* accumulation of water, some other liquid, or of moisture. Although there is no duty to remove natural accumulations of water, ice or snow, a voluntary undertaking may subject a defendant to liability if it is performed negligently. *Tzakis v. Dominick's Finer Foods, Inc.,* 356 Ill.App.3d 740, 746, 826 N.E.2d 987, 992 (1st Dist. 2005). But the duty of care is limited to the extent of a defendant's undertaking. *Roberson v. J.C. Penney Co.,* 251 Ill.App.3d 523, 527, 623 N.E.2d 364, 366 (3rd Dist. 1993).

Under Illinois law, the question in this case is whether the placement of the mat aggravated the natural accumulation of water, and the plaintiff has the burden of proof on that issue. *Roberson,* 251 Ill.App.3d at 528, 623 N.E.2d at 367; *Wilson v. Gorski's Food Fair,* 196 Ill.App.3d 612, 615, 554 N.E.2d 412, 415 (1st Dist. 1990). "Allowing saturated mats to remain in an entranceway does not by itself, however, transform the tracked in water into an unnatural accumulation nor suggest that defendant aggravated the water's natural accumulation." *Reed*, 394 Ill.App.3d at 44, 914 N.E.2d at, 637. But, Ms. Beaumont does not contend that the mat was saturated or that it aggravated the accumulation of water. The argument is that the Bank should be liable for failing to have attended

to the space between the threshold and the mat, and that a different placement might have prevented the fall. All the cases require rejection of that argument.

*Lohan v. Walgreens Co.*, 140 Ill.App.3d 171, 175, 488 N.E.2d 679, 682 (1st Dist. 1986) is instructive. In *Lohan,* the plaintiff sought recovery for injuries sustained when she slipped and fell on a puddle of water in the entranceway of the defendant's store. The plaintiff said that she could see that the mats in the entryway and the floor leading up to the mats in the entranceway were wet. 140 Ill.App.3d at 172-73, 488 N.E.2d at 680. When she entered the vestibule of the defendant's store, she fell, sustaining injuries as she stepped off a rubber mat and onto the wet bare tile. The appellate court upheld the trial court's grant of summary judgment for the defendant, holding that the defendant had no duty to put down additional mats to cover all wet spots on the floor, even though this had been its procedure in the past. 140 Ill.App.3d at 175, 488 N.E.2d at 682.

Similarly, the court in *Reed* rejected the argument that the defendant was liable for failing to position mats to cover bare sections of wet floor in its entryway. Like the plaintiff in *Lohan* – and the plaintiff here – the plaintiff in *Reed* slipped on an area of floor that was not covered by a mat. 394 Ill.App.3d at 41, 914 N.E.2d at 635. Upholding the trial court's entry of summary judgment for the defendant, the appellate court explained that it didn't matter that the defendant had not put down additional mats to cover the wet spots. "Defendant's duty extended only to maintaining with reasonable care the two mats placed down. . . . Since there is no evidence that defendant failed to maintain the mats with reasonable care, defendant is not liable for plaintiff's injuries." 394 Ill.App.3d at 48, 914 N.E.2d at 640-41. Likewise, Ms. Beaumont has not claimed that the Bank failed to properly maintain the mat.

In *Roberson v. J.C. Penney Co.*, 251 Ill.App.3d 523, 526-527, 623 N.E.2d 364, 36 (3rd Dist. 1993), the plaintiff slipped in a department store entryway where the defendant had positioned two mats, but had not covered all areas of bare, wet floor. Water had been tracked into the store from outside J.C. Penney's lower level entrance. Near the interior doors inside the store, J.C. Penney had placed two four foot by eight foot non-skid mats on the floor. When Roberson entered the store, she walked upon these mats. As she stepped off the mats and onto the floor, Roberson slipped and fell. J.C. Penney then placed a third mat in the vicinity of the other two mats. The plaintiff did not allege that the mats were defective in any way. The court upheld summary judgment for the defendant, explaining that the defendant's "duty extended *only* to maintaining with reasonable care the mats it installed." In this regard the court emphasized "the absence of any evidence that [defendant] failed to maintain the mats with reasonable care." 251 Ill.App.3d at 526-527, 623 N.E.2d at 366.

These cases necessarily compel rejection of the contention implicit in the contention that the non-decorative mat covering a portion of the tile floor three feet beyond the entry to the Bank created the "subconscious impression" in Ms. Beaumont's mind that the *uncovered* portion of the floor was safe. (*Response* at 2). Moreover, the contention is unsupported by any evidence. Since the "impression" described in the Response was a "subconscious" one, Ms. Beaumont obviously could not and did not testify about it. Nor has she adduced any supportive evidence from an expert of any kind. Finally, the argument is contrary to common experience and common sense.[6] To any

---

[6] Courts can and should take a "common sense view [of] the realities of normal life." *United States v. Horne,* 198 Fed.Appx. 865, 871 (11th Cir. 2006). *Accord, Dabertin v. HCR Manor Care, Inc.*, 373 F.3d 822, 830 (7th Cir. 2004).

reasonable adult, the ineluctable conclusion to be drawn from the presence in January of a "utilitarian" mat in the entranceway to the Bank was that the tile floor might be slippery. Why else have the mat? And that conclusion could not reasonably have given rise to the impression, conscious or otherwise, that the risk of slipping on the *uncovered* tiles in front of the mat was equal to or less than slipping on the tiles *covered* by the mat.

*Murray v. Bedell Co. of Chicago*, 256 Ill.App. 247 (1st Dist. 1930) decisively refutes Ms. Beaumont's speculative and unsupportable argument:

> The passageway is in fact practically a part of the sidewalk, but at the same time it is within the front line of the store, and under control of the store. Would anyone contend that, if a person walked into such passageway when it was raining, and there slipped and fell, he could recover damages because there was moisture on the floor of the passageway? Manifestly not. Everybody knows that, when people are entering any building when it is raining, they will carry some moisture on their feet, which will render the floor near the door on the inside damp to some extent, and every one knows that a damp floor is likely to be a little more slippery than a dry floor. … Owners or lessees of stores, office buildings, banks, hotels, theaters, or other buildings where the public is invited to come on business or pleasure, are not insurers against all forms of accidents that may happen to any who come. (Ellipsis in original).

The Response contains a variation of the subconscious impression argument, which runs this way: in connection with the daycare business that she ran in her home, she used mats from the front door to the kitchen area in order to cover the ceramic tile flooring. Additionally, her experience in other commercial facilities was that foyer walkways were completely covered by mats. It was this personal experience, the Response posits, which caused Ms. Beaumont "either explicitly or subliminally [to] assume[ ] or th[ink] that there was a mat present where she was stepping." (*Response* at 7; *Pl.St.* at ¶12). The argument is a non-starter.

The Response makes no attempt to explain how Ms. Beaumont's prior experiences are a basis on which liability can be imposed on the Bank. Negligence deals with a defendant's conduct, not with a plaintiff's subconscious or subliminal impressions, stemming from her own unique experiences. Or, put another way, since "'[p]roof of negligence in the air, so to speak, will not do,'" *Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 341, 162 N.E. 99 (1928)(Cardozo, C.J.), neither will proof in the abstract that the *plaintiff* misapprehended what should have been obvious to any reasonable person because of her unique, prior experiences and her unique reactions to them. [7] Negligence is about a defendant's "failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do." *State Auto. Mut. Insurance. Co. v. Habitat Const. Co.,* 377 Ill.App.3d 281, 288, 875 N.E.2d 1159, 1165 (1st Dist. 2007); Illinois Pattern Jury Instructions, Civil, No. 10.01 (2000). If the idiosyncratic experiences of a plaintiff factored into the analysis, the concept of reasonableness so deeply woven into the fabric of negligence law would lose its significance. *Compare CDX Liquidating Trust v. Venrock Associates*, _F.3d_, 2011 WL 1125815, *3 (7th Cir. 2011)("The term 'proximate cause is pervasive in American tort law, but that doesn't mean it's well understood. A common definition is that there must be proof of 'some direct relation between the injury asserted and the injurious conduct alleged.' But 'direct' is no more illuminating than 'proximate.' Both are metaphors rather than definitions. What the courts are trying to do by intoning these words is to focus attention on whether the

---

[7] While not citing *Palsgraf* or Sir Frederick Pollock's classic, Torts, from which Cardozo took the now famous aphorism, the Response sought to make this point in support of the contention that "[j]ust as proof of negligence in the air will not do, neither will proof of unnatural accumulation in the abstract. The defendant must have proof for it to prevail in its motion." (*Response* at 11).

16

particular contribution that the defendant made to the injury for which the plaintiff has sued him resulted from conduct that we want to deter or punish by imposing liability....")(citations omitted).

Thus, the question in this case remains whether there was an *unnatural* accumulation of water or moisture on the floor. For the reasons discussed above, Ms. Beaumont has failed to show that on that score there is a genuine issue of material fact.

Finally, there is the contention that §343 of the Restatement (Second) of Torts, which sets forth the general principles of a business owner's duty toward its invitees and which has been adopted in Illinois, trumps the natural accumulation rule and requires denial of the motion for summary judgment. That argument is foreclosed by the Illinois Supreme Court's recent decision in *Krywin v. Chicago Transit Authority, supra*, in which the majority, in a 5 to 2 decision, rejected the argument that the natural accumulation rule "is inconsistent with the principles stated in section 343 because it dilutes the owner's duty and undermines basic principles of public responsibility." 238 Ill.2d at 241, 938 N.E.2d at 455. The majority refused to have Illinois join those states, including Alaska and Michigan, that had used §343 of the Restatement as the basis for overruling the natural accumulation rule. That policy and interpretative question having been settled by Illinois' highest court, Ms. Beaumont's argument must be rejected.

## CONCLUSION

The Response to the motion for summary judgment incorrectly insists that there is no evidence oft water or moisture tracked in by Ms. Beaumont and other Bank customers from the wet sidewalk leading to the Bank. Her alternative theories of how the accident occurred are unsupported by any evidence, are hopelessly speculative, and contrary to Illinois law and to common experience as well. Ms. Beaumont not having shown that there is a genuine issue of material fact, and the Bank

being entitled to judgment as a matter of law, the Bank's Motion for Summary Judgment [# 19] is

GRANTED.

ENTERED:_____
UNITED STATES MAGISTRATE JUDGE

DATE: 4/5/11